***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing parties have shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms in part and reverses in part the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award:
 *********** EVIDENTIARY MATTERS
Defendants filed a Motion to Reopen the Record and Allow Additional Evidence on February 8, 2010. Plaintiff responded to defendants' motion and objected to the same. In its discretion, the Full Commission DENIES defendants' Motion to Reopen the Record and Allow Additional Evidence. *Page 2 
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On the date of injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant employer on the date of injury.
3. On all relevant dates, the carrier on the risk was Virginia Surety. First Comp. Insurance Company was the third-party adminstrator.
4. The date of injury is June 3, 2005.
5. Defendants accepted plaintiff's claim as compensable by filing an Industrial Commission Form 60 on July 26, 2005. Plaintiff has been receiving disability compensation on a weekly basis from defendants since June 28, 2005.
6. Defendant-employer does not presently employ plaintiff.
7. At the hearing before Deputy Commissioner Houser, the parties submitted a Notebook of Stipulated Documents, which was admitted into the record and marked as Stipulated Exhibit (1) (Pages 1-606 with page 552 missing), and which included the following:
 a) A Pre-Trial Agreement;
 b) Industrial Commission Forms and Filings;
 c) Medical Records;
 d) Plaintiff's Personnel File and;
 e) Discovery Responses. *Page 3 
8. Also made part of the record are the depositions of Dr. Michael D. Getter, Dr. John B. Garrett, Dr. Steven K. Gudeman, Dr. Tonya K. Powers, and Ms. Jamie Ridenhour, R.N. and Nurse Case Manager.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS • A Copy of Plaintiff's Prescription Medications, which was admitted into the record and marked as Plaintiff's Exhibit (1);
 • A Copy of a Surveillance Disc, which was admitted into the record and marked as Defendants' Exhibit (1);
 • A Copy of a Surveillance Disc, which was admitted into the record over Plaintiff's Objection and marked as Defendants' Exhibit (2);
 • A Photocopy of a Surveillance Report, which was admitted into the record and marked as Defendants' Exhibit (3) and;
 • A Photocopy of a Surveillance Report, which was admitted into the record over Plaintiff's Objection and marked as Defendants' Exhibit (4).
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Houser's October 21, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. To what additional medical compensation, if any, is plaintiff entitled, including home modifications, treatment, and appliances? *Page 4 
2. Whether plaintiff is entitled to have defendants provide a home health care professional to assist her with activities of daily living and medical care?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date before the Deputy Commissioner, plaintiff was forty-two (42) years of age with her date of birth being July 10, 1967.
2. On June 3, 2005, plaintiff was employed as a personal care assistant by defendant-employer when she sustained an admittedly compensable injury by accident involving her back. Specifically, on that date, plaintiff was assisting a client into a wheelchair in order to give her a shower when plaintiff heard something snap in her back.
3. Defendants accepted the compensability of plaintiff's back injury through the filing of an Industrial Commission Form 60.
4. Prior to her June 3, 2005 back injury, plaintiff underwent back surgery in 2001 following a motor vehicle accident.
5. Also prior to her June 3, 2005 injury by accident, plaintiff received treatment for depression following the birth of her children and again during a stress-related claim against a former employer. Additionally, subsequent to June 3, 2005, plaintiff experienced unrelated stressors, including the death of her father and the separation from her husband.
6. For her June 3, 2005 back injury, plaintiff initially sought treatment at Carolina Orthpaedic, where she was examined by Dr. Robert A. Blake. Plaintiff was diagnosed as having *Page 5 
an acute back strain, and received conservative treatment including physical therapy and epidural injections.
7. On July 19, 2005, plaintiff was released to return to sedentary work, but did not return to work for defendant-employer.
8. In September 2005, plaintiff sought treatment from Dr. Steven Gudeman, a neurosurgeon. Dr. Gudeman testified that in September 2005, plaintiff indicated that her back had been doing well since her 2001 disc surgery until the time of her June 3, 2005 injury by accident. Additionally, plaintiff reported experiencing a thirty to forty percent (30%-40%) improvement since her workplace injury as the result of her conservative treatment.
9. In October 2005, plaintiff obtained employment with a different employer as a social worker. Thereafter, plaintiff's employment in that capacity ended.
10. In December 2005, with plaintiff experiencing increased back and leg pain, and based upon an MRI that revealed a large disc herniation, Dr. Gudeman recommended that she undergo lumbar disc surgery.
11. On December 6, 2005, plaintiff underwent an L4-L5 laminectomy, facetectomy, and foraminectomy procedure performed by Dr. Gudeman.
12. On April 3, 2006, Dr. Gudeman opined that plaintiff had reached maximum medical improvement and assigned her a twelve percent (12%) permanent partial disability rating for her back. Additionally, Dr. Gudeman assigned plaintiff a thirty (30) pound lifting restriction.
13. In May 2006, plaintiff sought treatment from Dr. Michael D. Getter, an orthopedic surgeon, and reported experiencing back and leg pain as the result of her June 3, 2005 injury by accident. Following diagnostic tests, on August 2, 2006, plaintiff underwent a decompression *Page 6 
and fusion procedure performed by Dr. Getter at the L4-L5 and L5-S1 levels. Dr. Getter has testified that this surgery was performed to relieve plaintiff's back related symptoms.
14. Approximately three weeks after her August 2, 2006 surgery, plaintiff was involved in what she described as a low impact motor vehicle accident. Plaintiff testified that on May 31, 2006, prior to the August 2006 motor vehicle accident, she reported to her pain management clinic that she was ambulating without assistance. However, plaintiff testified that she was unable to recall whether her physicians noted a change in her gait following the August 2006 motor vehicle accident.
15. Regarding plaintiff's post-surgical prognosis, Dr. Getter testified that due to the amount of scar tissue, plaintiff is unlikely to regain full motor functionality. On November 10, 2006, Dr. Getter noted that plaintiff had begun pool related therapy, and that her condition was improving because of the pool therapy. However, by April 2, 2007, Dr. Getter noted that plaintiff was not making significant progress towards her ultimate recovery.
16. On July 9, 2007, with nothing further to offer plaintiff as treatment, Dr. Getter opined that she had reached maximum medical improvement and assigned her a thirty-five percent (35%) permanent partial disability rating. Also on that date, Dr. Getter noted that plaintiff still was unable to completely stand-up straight. Dr. Getter last examined plaintiff on October 25, 2007, and testified that at that time, plaintiff was ambulating and performing well in rehabilitation.
17. On the issue of causation as it relates to plaintiff's back condition and accompanying symptoms, Dr. Getter opined that plaintiff's back and lower extremity pain that necessitated the surgery he performed was causally related to her June 3, 2005 injury by accident. *Page 7 
18. Plaintiff contends in addition to her back, she has several other conditions that are causally related to her admittedly compensable June 3, 2005 injury by accident and related surgical procedures. These include anxiety and depression, carpal tunnel syndrome, diabetes, bilateral knee pain, incontinence, and a heart condition. Plaintiff further contends that as the result of her June 3, 2005 injury by accident, related surgical procedures, and additionally related medical conditions, she utilizes several assistive devices to aid in her mobility. Plaintiff also alleges she medically requires multiple additional assistive devices and home modifications. These devices and modifications include an over the toilet extension, lift chair, wheelchair, overhead grabber, a pool for therapy, and a hospital bed.
19. Plaintiff's daughter, Ms. Kendall Hubbard, lives with plaintiff and she assists plaintiff in bathing, using the toilet, and with cooking and cleaning. Ms. Kendall Hubbard testified that her grandmother and sister also assist in providing care to plaintiff and that if no one is around, plaintiff mostly remains in bed. Finally, Ms. Kendall Hubbard testified that she has been accepted into college and would be leaving plaintiff's home to attend college.
20. Plaintiff testified that some days she feels better than others, and is able to use her four pronged cane without assistance. On other days, plaintiff testified that she has to use a walker, and that due to the use of her walker, she developed bilateral carpal tunnel syndrome, for which she wears arm braces. As for her balance, plaintiff testified that she has fallen multiple times and that using the shower is hazardous without assistance.
21. Ms. Jamie Ridenhour, the nurse case manager for plaintiff's claim for the period of July 2006 through July 2008, testified to recalling plaintiff receiving assistance at her home from her daughters. This assistance involved driving, getting plaintiff's walker for her, opening doors, and helping plaintiff get into and out of her car. At her deposition, Ms. Ridenhour *Page 8 
testified that it was her understanding that plaintiff needed assistance to perform all of the activities of daily living.
22. Surveillance of plaintiff was conducted on multiple days. However, the Full Commission gives the evidence related thereto, little, if any weight.
23. Since her June 3, 2005 injury by accident, plaintiff has been prescribed, and continues to take, several prescription medications. Plaintiff contends that the amount of prescription medications she has been prescribed and taken has caused her diabetes, and notes that prior to June 3, 2005, she did not have diabetes.
24. Dr. Tonya K. Powers, who has served primarily as plaintiff's pain management physician, has opined that more likely than not, plaintiff's diabetes is causally related to her June 3, 2005 injury by accident and associated medication and medical treatment. Dr. Powers was tendered without objection as an expert in anesthesiology as well as pain management. Upon cross-examination by defendants during her deposition, Dr. Powers acknowledged that her qualifications as a physician do not include endocrinology.
25. Dr. John B. Garrett, an urologist, first examined plaintiff in February 2006 and diagnosed her with urinary incontinence. For treatment, Dr. Garrett has used non-medicinal treatments as well as prescribing medications. Dr. Garrett has opined that being sedentary, as plaintiff attests to being most of the time, can lead to a person developing urinary stones, which in turn cause incontinence. Ultimately, Dr. Garrett was unable to give an opinion to a reasonable degree of medical certainty as to whether plaintiff's incontinence was causally related to her June 3, 2005 injury by accident.
26. Dr. Powers testified that incontinence is a possible ramification of plaintiff's arachnoiditis, which is a scarring or clumping of nerves in the spinal column. *Page 9 
27. Dr. Powers has opined that plaintiff's depression and anxiety are causally related to her June 3, 2005 injury by accident and associated medication and medical treatment. Additionally, plaintiff notes that Ms. Ridenhour recalled plaintiff stating that she was depressed because of her overall condition.
28. Dr. Koch, plaintiff's primary care physician, has noted that plaintiff has some form of congestive heart failure, which Dr. Koch has believed may be related to her overall condition and inability to move around. The Full Commission finds Dr. Koch's testimony insufficient to establish an opinion to a reasonable degree of medical certainty regarding plaintiff's heart condition and any relationship to plaintiff's June 3, 2005 injury.
29. Dr. Powers has opined to a reasonable degree of medical certainty, that plaintiff's June 3, 2005 injury by accident was the cause of her bilateral knee problems. Dr. Powers opined that plaintiff's use of a poorly fitting walker was more likely than not the cause of her carpal tunnel syndrome.
30. Dr. Gudeman testified that after he released plaintiff from his care, plaintiff made no reports to his office of experiencing pain or difficulties. Additionally, Dr. Gudeman testified that he never prescribed any assistive devices or attendant care for plaintiff and that plaintiff did not have any incontinence issues as of her release date of April 3, 2006.
31. Dr. Getter testified that he did not examine or treat plaintiff for any of the conditions at issue other than her back. Accordingly, Dr. Getter expressed no opinion on the issue of whether plaintiff needs further assistance devices, in home care, or home modifications.
32. Because defendants' Industrial Commission Form 60 lists a body part different than that which is related to anxiety, depression, carpal tunnel syndrome, diabetes, bilateral knee pain, incontinence, as well as being a different part of the body from plaintiff's heart and any *Page 10 
related condition, it is plaintiff's burden to prove that these conditions are the direct and natural result of or causally related to her June 3, 2005 injury by accident.
33. The Full Commission gives no weight to Dr. Powers' opinion regarding the causal relationship between plaintiff's June 3, 2005 injury and her diabetes. Dr. Powers expertise is in pain management, not endocrinology, and therefore her opinion relating plaintiff's diabetes to the June 3, 2005 injury by accident is given no weight by the Full Commission.
34. The Full Commission gives no weight to Dr. Powers' opinion that plaintiff's bilateral knee problems that may have led to her ambulatory problems are the direct and natural result of or causally related to her June 3, 2005 injury by accident. To the contrary, the credible evidence of record supports a finding that plaintiff's knee and ambulatory issues arose only after her August 2006 motor vehicle accident and were not the direct and natural result of or causally related to her June 3, 2005 injury by accident.
35. Given the above finding regarding plaintiff's knee and ambulatory issues, the Full Commission further finds that there is insufficient evidence upon which to find that plaintiff's carpal tunnel syndrome is the direct and natural result of or causally related to her June 3, 2005 injury by accident. Additionally, based upon the above finding regarding plaintiff's knee and ambulatory issues, there is insufficient credible evidence of record upon which to find that plaintiff's need for home modifications or additional ambulatory assisting devices are the direct and natural result of or causally related to her June 3, 2005 injury by accident.
36. The Full Commission finds, based on the competent evidence of record, that plaintiff has produced sufficient evidence upon which to find that her anxiety, depression, and incontinence are the direct and natural result of or causally related to her June 3, 2005 injury by accident. *Page 11 
37. The Full Commission finds there is insufficient evidence upon which to find that plaintiff's heart condition is the direct and natural result of or causally related to her June 3, 2005 injury by accident.
38. The Full Commission finds plaintiff has failed to produce sufficient evidence upon which to find that her diabetes is the direct and natural result of or causally related to her June 3, 2005 injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 3, 2005, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer involving her back. N.C. Gen. Stat. § 97-2(6).
2. Because defendants' Industrial Commission Form 60 lists a body part different than that which is related to anxiety, depression, carpal tunnel syndrome, diabetes, bilateral knee pain, incontinence, as well as being a different part of the body from plaintiff's heart and any related condition, it is plaintiff's burden to prove that these conditions are the direct and natural result of or causally related to her June 3, 2005 injury by accident.Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v. AmericanAirlines 174 N.C. App. 128, 620 S.E.2d 288 (2005).
3. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to *Page 12 
the cause of the injury. Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link."Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000). "[A]lthough medical certainty is not required, an expert's `speculation' is insufficient to establish causation." Id.
4. Plaintiff has failed to produce sufficient evidence upon which to conclude that her bilateral knee problems or ambulatory issues are the direct and natural result of or causally related to her June 3, 2005 injury by accident. N.C. Gen. Stat. § 97-2(6);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
5. There is insufficient evidence upon which to conclude that plaintiff's carpal tunnel syndrome, need for home modifications, or additional ambulatory assisting devices, are the direct and natural result of or causally related to her June 3, 2005 injury by accident. Id.
6. There is insufficient evidence upon which to find that plaintiff's heart condition is the direct and natural result of or causally related to her June 3, 2005 injury by accident.Id.
7. There is insufficient evidence upon which to find that plaintiff's diabetes is the direct and natural result of or causally related to her June 3, 2005 injury by accident.Id.
8. There is sufficient evidence upon which to find that plaintiff's depression, anxiety, and incontinence are the direct and natural result of or causally related to her June 3, 2005 injury by accident. Id.
9. As the result of her June 3, 2005 injury by accident, plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred that are related to her depression, *Page 13 
anxiety, and incontinence, subject to the provisions of N.C. Gen. Stat. § 97-25.1, but not for her bilateral knee problems, ambulatory issues, carpal tunnel syndrome, or heart condition, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay for medical expenses incurred or to be incurred that are related to plaintiff's depression, anxiety, and incontinence, subject to the provisions of N.C. Gen. Stat. § 97-25.1, but not for her bilateral knee problems, diabetes, ambulatory issues, carpal tunnel syndrome, or heart condition, when the medical bills have been approved according to established Industrial Commission procedures.
2. Defendants shall pay the costs.
This the 29th day of April, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR *Page 14 
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1